**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

MICHAEL D. BOWDEN, ADC #088956     *
                         *
           Plaintiff,     *
v.                             *
                         *     No. 5:13CV00179-SWW-JJV
JIMMY BANKS; *et al.*            *
                         *
          Defendants.    *

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Susan Webber Wright.   Any party may serve and file written objections to this recommendation.   Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not

1

offered at the hearing before the Magistrate Judge.

3.     The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

## I.     INTRODUCTION

Plaintiff Bowden, a state inmate confined at the Varner Unit of the Arkansas Department of Correction (ADC) filed this action *pro se* pursuant to 42 U.S.C. § 1983, alleging Defendants failed to protect him from an attack by other inmates, in violation of his Eighth Amendment rights.  (Doc. No. 2.)

Pending before the Court is Defendants' Motion for Summary Judgment, Statement of Facts, and Brief in Support (Doc. Nos. 36-39), to which Plaintiff has responded (Doc. Nos. 49-51.)

## II.     COMPLAINT

Plaintiff alleges that he was attacked by several inmates on December 14, 2012, while walking through a tunnel at the Varner Unit (Doc. No. 2 at 3-4.)  He was carrying his laundry bag, containing approximately $100 worth of commissary items received as a Christmas package.  (*Id.*

at 3.)  The inmates who attacked him choked him unconscious and stole the bag.  (*Id*. at 3, 10.)  After regaining consciousness, he reported the attack to ADC Security Officer Hudson.  (*Id*. at 11.)  He was taken to the office of the Chief of Building Security for investigation, where security camera footage revealed the identity of his assailants. (*Id*.)  The assailants were taken from their barracks and placed in isolation and Plaintiff was taken to the infirmary.  (*Id*.)  At the infirmary, a nurse only took Plaintiff's blood pressure and then dismissed him.  (*Id*. at 13.)  Plaintiff says he suffered injury to his neck, throat and shoulder, and suffered pain for several months after the attack.  (*Id*.)[1]

Plaintiff claims the inmates who attacked him were classified as administrative segregation inmates who should not have been unsupervised.  (*Id*. at 5.)   In addition, he points out the attack occurred in view of five security cameras which Defendants Williams and Hudson were responsible for monitoring.  (*Id*. at 8.)  Plaintiff claims Williams and Hudson were reckless in supervising security and failing to prevent the attack.  (*Id*. at 9.)  Plaintiff also sues Defendants Banks, Page, and Bolden, claiming they were responsible for improper placement of the administrative segregation barracks and that they failed to develop policies and procedures to ensure these dangerous inmates were adequately supervised. (*Id*. at 7, 19.)

## III.   SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions,

---

[1]Plaintiff also claims in his Response to Defendants' Motion that the injury to his throat caused cancer to develop on his larynx, for which he has been treated by chemotherapy and radiation. (Doc. No.  50 at 28, 39.)

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Webb v. Lawrence County,* 144 F.3d 1131, 1134 (8th Cir. 1998) (citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 1135 (citations omitted). Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Id*.

A.      **Exhaustion**

Defendants ask the Court to dismiss Plaintiff's Complaint for failure to exhaust his administrative remedies as required by the ADC grievance policy, Administrative Directive (AD) 12-16, and the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. In support of their position, Defendants provide the declaration of inmate grievance supervisor Barbara Williams. Ms. Williams states that Plaintiff exhausted one grievance concerning the December 14, 2012, incident, but that the grievance concerned his lack of medical treatment and named only medical person. (Doc. No. 37-1 at 3, 14-17.) They argue that the ADC grievance policy specifically requires complete exhaustion for all defendants prior to filing a § 1983 lawsuit, so Plaintiff's failure to name any of the Defendants in an exhausted grievance requires dismissal of his Complaint.

Plaintiff, however, states that on December 14, 2012, he submitted three other grievances concerning the attack, two of which named Defendants Williams and Hudson. (Doc. No. 50 at 35, 53-55.) When two different problem-solvers failed to accept his step one grievances for processing,

4

he submitted them as step two grievances on December 20, 2012, by placing them in the grievance box and noting on the grievances that Officers Mingo and Hester refused to accept them. (*Id*. at 35.) He submitted an additional grievance on January 9, 2013, complaining that he never received acknowledgment of those grievances or responses. (*Id.* at 36, 57.) However, again another problem-solver, Officer Whaley, refused to accept that grievance. (*Id.* at 36.) Plaintiff then designated that grievance as step two and dropped it in the grievance box. (*Id*.) Plaintiff complains that the inmate grievance procedure states that an acknowledgment form is to be sent to the inmate who submits a step two grievance within five days, but does not state what action the inmate should take when he does not receive the acknowledgment. (*Id*.) In addition, it does not explain how he can appeal if he does not receive an acknowledgment or a response from the Warden. (*Id.* at 37.)

Plaintiff then explained his situation to Sergeant Burchfield on January 24, 2013, and gave her two copies of each of his missing grievances for submission. (*Id*.) However, when he again received no acknowledgment, he submitted another grievance complaining about the missing grievances and gave it to Officer McCrimmon on February 8, 2013. (*Id*.) When he did not receive a response, he filed it again as a step two grievance, and it was eventually acknowledged.[2]

In March 2013, Plaintiff encountered Sergeant Burchfield, and told her he did not receive responses to the grievances he had given her. (Doc. No. 50 at 38.) When she checked with Grievance Officer Sharon Cantrell (to whom Burchfield had given the grievances), Cantrell discovered that she had placed the copies in her personal notebook, but failed to submit them. She wrote Plaintiff a memo to this effect. (*Id*. at 38, 60.)

---

[2]Plaintiff provides only the Warden's response to this grievance, which indicates that they have record of only the one medical grievance, submitted on December 14, 2012, and no record of any of the other grievances. (Doc. No. 50 at 64.)

According to the PLRA,

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA exhaustion requirement is "an affirmative defense that the defendant has the burden to plead and to prove." *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005). However, the PLRA requires exhaustion of "such administrative remedies as are available," and "a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (citing *Johnson v. Garraghty*, 57 F.Supp.2d 321, 329 (E.D.Va.1999)).

Having reviewed the parties' submissions, the Court finds that Plaintiff presents sufficient evidence to raise the inference that he exhausted all "available" remedies by submitting and re-submitting several grievances concerning the December 14, 2012, incident. Plaintiff has provided copies of the grievances submitted, together with the memo from grievance Officer Cantrell admitting that she failed to submit the copies given to her by Sergeant Burchfield. Absent further explanation from Defendants concerning this chain of events, the Court finds that Plaintiff exhausted his remedies as to his claims against Defendants Williams and Hudson.

However, even considering all the grievances he submitted as having been exhausted, the Court finds that he did not exhaust his remedies with respect to Defendants Banks, Bolden, and Page, because he did not name them in any of the grievances he submitted, or otherwise refer to them or to the allegations he has set forth in this action. The ADC grievance procedure specifically requires inmates to "write a brief statement that is specific as to the substance of the issue or complaint to

include the date, place, *personnel involved* or witnesses..." (Emphasis added) (Doc. No. 37-2 at 38.) In addition, as noted above, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. at 218.  Therefore, Defendants Banks, Bolden and Page should be dismissed for failure to exhaust.

### B.      Official Capacity Claims

The Court agrees with Defendants Williams and Hudson that Plaintiff's damages claims against them in their official capacities should be dismissed, pursuant to sovereign immunity.  *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 65 (1989);  *Murphy v. State of Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997).

### C.      Qualified Immunity/Failure to Protect

The Court finds that Defendants Williams and Hudson are entitled to qualified immunity on Plaintiff's failure-to-protect claims against them in their individual capacities.  Qualified immunity protects officials who acted in an objectively reasonable manner.  It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact.  *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable

to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[3]  Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.  *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

To support an Eighth Amendment claim for relief against Defendants for failure to protect, Plaintiff must allege and prove that he was incarcerated under conditions posing a substantial risk of serious harm, and that Defendants recklessly disregarded that risk.  *Jackson v. Everett*, 140 F.3d 1149, 1151-1152 (8th Cir. 1998).  "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk."  *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000.

With regard to the subjective component, Plaintiff admitted in his deposition testimony that the attack was a surprise.  (Doc. No. 37-6 at 30, 39.)  He did not know any of the inmates who attacked him as they were complete strangers, and Plaintiff had no reason to fear any of them.  *Id.* Defendants should prevail on this basis alone.  *See Curry v. Crist*, 226 F.3d at 979; *Jackson v. Everett*, 140 F.3d at 1152; *Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990).

However, Defendants have also provided a video of the incident.  (Doc. No. 39.)  At 3:00:05

---

[3]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

p.m., the video shows a group of inmates - one of whom is the Plaintiff - plus two other inmates at the side of the tunnel.  (Doc. No. 39, Doc. No. 37-6 at 26.)  At 3:00:15 p.m., the video shows Plaintiff lying on the floor, with several inmates walking away, and at 3:00:27 p.m., Plaintiff stands up.  (Doc. No. 39, Doc. No. 37-1 at 26, 27.)  Plaintiff left the tunnel at 3:00:33 p.m. (*Id.*)  Based on this video evidence, the Court concludes that attack was a surprise and Plaintiff fails to state a claim of deliberate indifference.

Based on all the evidence presented, viewed in the light most favorable to Plaintiff, at best this case involves negligence.  In coming to this conclusion, the Court has considered Plaintiff's argument that Defendants Williams and Hudson should have been watching the hallway, should have noted that inmates were congregating in the tunnel, and should have prevented the attack.  (*Id*. at 68, 69.)  In support of this position, Plaintiff presented the Declaration of fellow inmate Jeffery Ratchford, who stated on the date of the incident he witnessed Defendant Hudson yelling and playing with inmates.  (Doc. No. 50 at 42.)  Ratchford also claimed that months after the attack Defendant Williams complained about not being able to control the administrative segregation inmates and confirmed that, on the date of the incident, the area where the incident occurred was his responsibility.  (*Id* at 46.)  While the Court finds this event was terribly unfortunate, Plaintiff's allegations are claims of negligence.  And an allegation of negligent behavior is insufficient to support such a claim of deliberate indifference.  *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).

Lastly, Plaintiff's claim that Defendants failed to come to his aid in a timely manner is without merit.  There is not even a hint of evidence that jail officers were deliberately indifferent in responding to the attack.

Therefore, no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right by Defendants Williams and Hudson.

**IV.     CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1.      Defendants' Motion for Summary Judgment (Doc. No. 36) be GRANTED.

2.      Plaintiff's allegations against Defendants Banks, Bolden, and Page be DISMISSED without prejudice, for failure to exhaust his administrative remedies.

3.      Plaintiff's allegations against Defendants Williams and Hudson be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 28th day of October, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE